# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JAMES ANDREWS, ) | |
| FELONY FRANKS #1, INC., ) | |
| ) | |
|     Plaintiffs, ) | No. 11 C 2956 |
| ) | |
|         vs. ) | Judge Coleman |
| ) | Magistrate Judge Ashman |
| CITY OF CHICAGO, ) | |
| WILLIE COCHRAN, ) | |
| REGNER RAY SUAREZ, ) | |
| PAT DOWELL, and ) | |
| ROBERT FIORETTI, ) | |
| ) | |
|     Defendants. ) | |

## FIRST AMENDED COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the First Amendment and Fourteenth Amendment of the United States Constitution.

2. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4. Plaintiff James Andrews is a resident of Oak Park, Illinois.

5. Andrews is the owner and CEO of Felony Franks #1, Inc., an Illinois corporation doing business as Felony Franks, a hot dog stand and fast food restaurant located at 229 South Western Avenue in Chicago.

6. The individual Defendants, Willie Cochran, Regner Ray Suarez, Pat Dowell, and Robert Fioretti, are aldermen for the City of Chicago and members of the Committee on Transportation and the Public Way ("Committee"). At all times relevant to this Complaint, these individual Defendants were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

7. Defendant Fioretti is the alderman of the Second Ward, the ward in which Felony Franks is located.

8. Defendants Cochran, Suarez, Dowell and Fioretti are sued in their individual capacities.

9. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Aldermen.

**Facts**

10. A fundamental aim of Felony Franks is to provide employment opportunities to convicted felons, a segment of the population that has difficulty finding gainful employment.

11. Felony Franks' staff is comprised of primarily convicted felons.

12. Felony Franks #1, Inc. was incorporated on September 24, 2008.

13. In late 2008, Andrews signed a 10-year lease, commencing January 1, 2009, for the building at 229 South Western Avenue as the future site of Felony Franks.

14. In or about October 2008, Andrew began efforts to obtain Fioretti's approval for TIF funds, certain permits, and certain construction plans, all of which required aldermanic approval.

15. Construction on the building to renovate and transform the space into the current Felony Franks hot dog establishment began on or about January 1, 2009.

16. Andrews went forward with those parts of the construction and business plan that did not require Fioretti's approval, and was able to open Felony Franks on or about July 1, 2009.

17. In order to promote and advertise his business, Andrews sought to have a large sign overhanging the sidewalk displaying his business name, "Felony Franks."

18. The Municipal Code of Chicago (the "Code") requires two different permits to erect this type of sign: a permit for the sign itself ("sign permit"), and a permit for the public space that the sign occupies ("public way use permit").

19. Section 10-28-015 of the Code regulates the application and issuance of public way use permits. Paragraph (a) lists the requirements for an application, including: "(6) any other information required by the commissioner [of the Chicago BACP]."

20. The Commissioner of the City of Chicago's Department of Business Affairs and Consumer Protection ("Commissioner") is an employee of the City of Chicago.

21. The City of Chicago's Department of Business Affairs and Consumer Protection ("Chicago BACP") is an official regulatory entity of the City of Chicago.

22. The City of Chicago describes the "Permit Process for Signs" (the "Process") in a public document found at http://www.cityofchicago.org/content/dam/city/depts/bldgs/general/EZPERMIT/ComprehensiveSignPermitProcess2009.pdf.

23. The Process requires the use of a registered, bonded sign erector company. The business owner then works with the sign erector company to complete the necessary applications for the permits for the business's sign. It is the sign erector company that submits the application on behalf of the business owner.

24. Included in the Process is a publication from the Chicago BACP titled: "Steps to Obtain a Public Way Use Permit." Step Three states that an applicant business owner must obtain the alderman's signature on the application for the public way use permit.

25. The Chicago BACP's "Application to Use the Public Right of Way" contains a space for the alderman's signature and instructions that the alderman's approval is required.

26. As required by the Code and the Process, Andrews hired NSI Sign, a properly registered and bonded sign erector company, to create and erect the sign, as well as complete the necessary permit process.

27. NSI Sign and Andrews tried, but were unable, to obtain Fioretti's signature on the public way use permit application.

28. Andrews called Fioretti's office several times and was informed by Fioretti's chief of staff, Andy, to change the name "Felony Franks" and Fioretti would sign the application.

29. As part of the construction process and development of the space, Andrews also planned to apply for TIF money.

30. TIF money refers to funds allocated to Tax Increment Financing districts that are intended to stimulate housing, jobs and commercial activity in struggling areas of Chicago. TIF money can be approved for the construction and development of a local business that forms part of the overall commercial development of an area. The Small Business Improvement Fund is an application for assistance to receive TIF money.

31. Andrews also planned to execute a "curb cut" in order to include a drive-thru as part of Felony Franks.

32. In accordance with the normal practices and procedures in the City of Chicago, Andrews contacted Fioretti regarding applying for TIF money and permits for his sign and curb cut.

33. Fioretti told Andrews that he did not like the name Felony Franks.

34. Fioretti informed Andrews that Andrews needed to change the name of his business or he would not help Andrews get the necessary permits and TIF money to perform construction and develop Felony Franks.

35. Fioretti specifically objected to Andrews' proposals based on the business's name, "Felony Franks."

36. Fioretti told Andrews that he would not help him and would make it as difficult as possible if Andrews did not change the name of the business.

37. Fioretti then took action intended to delay, impede and prevent Andrews from proceeding with his plans to develop the site and promote the business.

38. Fioretti refused to sign Andrews' applications for permits, including the public way use permit.

39. Fioretti refused to sponsor Andrews' applications for permits, including the public way use permit.

40. Fioretti did not respond to Andrews' repeated phone calls and written requests for approval of his plans and applications, including the public way use permit.

41. The City of Chicago has no specific, detailed criteria upon which an alderman must base the decision to approve, sign or sponsor an application permit.

42. The alderman approval process for a permit application is not regulated by the Code or any other public standards.

43. The Code does not provide any judicial or administrative review of an alderman's refusal to approve, sign or sponsor a permit application.

44. Fioretti persuaded other aldermen and members of the Committee to vote against Andrews' public way use permit.

45. Fioretti did this by refusing to sponsor Andrews' permit application and by publicly declaring his dislike and disapproval of Andrews' business name, Felony Franks.

46. Fioretti's delay and opposition to Andrews' efforts to obtain permits and TIF

money to develop Felony Franks continued over a period of approximately two-and-a-half years.

47. Eventually, by inquiring with City Hall, Andrews made an application (called a citizen's ordinance) for a public way use permit, and presented it to the City Council without Fioretti's signature.

48. Andrews' application for a public way use permit was introduced on March 9, 2011, without the required alderman's signature.

49. On April 11, 2011, Andrews testified regarding his application for a public way use permit at the Committee on Transportation and Public Way meeting.

50. The Committee failed to vote on Andrews' permit application on April 11, 2011.

51. At another Committee meeting, on May 2, 2011, the Committee voted on Andrews' permit.

52. There were seven members present at the May 2, 2011, meeting.

53. At the May 2, 2011, meeting, three members voted to pass Andrews' permit application, three members voted against Andrews' permit, and one member abstained from voting.

54. This resulted in a tie vote causing Andrews' application to be "tabled," i.e. terminated without formally failing to pass it.

55. Defendants Cochran, Suarez and Dowell were the three Committee members that voted against Andrews' permit application.

56. Cochran, Suarez and Dowell voted against Andrews' permit based on their personal dislike of Andrews' business name and the content of his sign.

57. Cochran, Suarez and Dowell were also persuaded by Fioretti to vote against the permit.

58. The Committee finally voted to approve a public way use permit for Andrews' sign at a subsequent Committee meeting on June 6, 2011.

59. The Committee's June 6, 2011, approval of Andrews' public way use permit application occurred after Andrews filed this lawsuit.

60. The Committee's June 6, 2011, approval of Andrews' public way use permit application occurred after the Committee members were advised by City of Chicago attorneys that disapproval of the public way use permit for the sign would result in a successful First

Amendment claim for Andrews.

61. The above delays in voting to approve Andrews' public way use permit for his sign were caused by Fioretti, and the aldermen he persuaded.

62. Fioretti caused the delays by, *inter alia*: refusing to sign Andrews' application, refusing to sponsor Andrews' application, refusing to present Andrews' application, refusing to return Andrews' calls and inquiries, making prejudicial comments at the Committee meetings, making prejudicial comments to the public, influencing Committee members to delay voting, and influencing Committee members to vote against Andrews' permit application.

63. The above delays in voting to approve Andrews' public way use permit for his sign were also caused by Defendants Cochran, Suarez and Dowell, who voted against approving the permit on May 2, 2011.

64. According to the City of Chicago's "Permit Process for Signs," the approval of a public way use permit should take between thirty to ninety days.

65. Andrews encountered the above-described opposition and delay from Fioretti over a period of approximately two-and-a-half years.

66. Andrews' public way use permit was granted by City Council on June 8, 2011.

67. Andrews encountered the above-described opposition and delay from the Defendants Cochran, Suarez and Dowell over a period of about two months.

68. The above-described opposition and delay only ceased after the filing of this lawsuit on May 3, 2011.

69. Andrews finally received all the necessary permits and was able to hang his sign in August 2011.

70. The Defendant-Aldermen's opposition and delay in obtaining the public way use permit in order to erect a sign caused Andrews a loss of profit and other financial losses.

71. Fioretti's opposition to Andrews obtaining TIF money and permit to perform a curb cut caused Andrews to suffer a loss of profit and other financial losses.

72. The Defendant-Aldermen's public disapproval of Felony Franks caused Plaintiffs to suffer a loss of reputation, loss of profits and other financial losses.

73. The Defendants caused Plaintiffs to suffer a loss of freedom of expression and abridged Plaintiffs' free speech rights.

## COUNT I
### (42 U.S.C. § 1983 – First Amendment, Free Speech Violation Claim
### v. Defendant-Aldermen)

74. Plaintiffs re-allege paragraphs 1 through 73 as if fully set forth herein.

75. The Defendant-Aldermen's conduct described above deprived and abridged Plaintiffs' right to free speech under the First Amendment, in that the Defendant-Aldermen's conduct against Plaintiffs was based solely on the Defendant-Aldermen's dislike for Plaintiffs' business name.

76. The Defendant-Aldermen's conduct in violation of the First Amendment caused the Plaintiffs to suffer damages, including loss of profits, other financial losses, loss of reputation, loss of free expression, and caused Andrews emotional distress.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against Defendants Fioretti, Cochran, Suarez and Dowell;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Equal Protection, Class-of-One Claim v. Defendant-Aldermen)

77. Plaintiffs re-allege paragraphs 1 through 73 as if fully set forth herein.

78. The Defendant-Aldermen's conduct described above deprived Plaintiffs of equal treatment under the law.

79. Plaintiffs were similarly situated to other businesses and business owners in the City of Chicago applying for sign and public way use permits, as well as other permits and TIF money.

80. The Defendant-Aldermen treated Plaintiffs differently than similarly situated businesses and business owners by having Plaintiffs' applications and efforts to obtain permits and TIF money delayed and refused.

81. Other businesses and business owners in the City of Chicago are able to readily obtain aldermen's signatures on their permit applications and have their applications promptly

approved by the Committee.

82. Other businesses and business owners in the City of Chicago are able to readily obtain aldermen's cooperation in obtaining TIF money and other permits.

83. The difference between Plaintiffs and other businesses and business owners was that Plaintiffs wanted to erect a sign with a business name that the Defendant-Aldermen did not like.

84. Based on their dislike for the business's name "Felony Franks," the Defendant-Aldermen treated Plaintiffs differently out of spite, ill will and animus.

85. The Defendant-Aldermen treated Plaintiffs differently without any rational basis.

86. The Defendant-Aldermen treated Plaintiffs differently due to the exercise of a fundamental right, i.e. the right to free speech protected by the First Amendment.

87. The Defendant-Aldermen's conduct in violation of the Equal Protection clause of the Fourteenth Amendment caused the Plaintiffs to suffer damages, including loss of profits, other financial losses, loss of reputation, loss of free expression, and caused Andrews emotional distress.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against Defendants Fioretti, Cochran, Suarez and Dowell;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorneys' fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
**(42 U.S.C. § 1983 – First Amendment, Free Speech Violation Claim v. City of Chicago)**

88. Plaintiffs re-allege paragraphs 1 through 73 as if fully set forth herein.

89. The Defendant City of Chicago's Municipal Code, in conjunction with the Commission's Process, does not provide for review of an alderman's failure to sign a public way use permit application.

90. Therefore, the City of Chicago, by the Code and the Process, vest Chicago aldermen with unbridled discretion to sponsor or refuse to sponsor a citizen's public way use

permit application.

91.  As applied to the Plaintiff, the Code and the Process vested Fioretti with unbridled discretion to refuse to sponsor Plaintiffs' permit application.

92.  This resulted in a prior restraint on Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment.

93.  The Code and the Process, as applied to Plaintiffs, are unconstitutional.

94.  The Code and the Process, on their face, are unconstitutional.

95.  The Defendant City of Chicago's Municipal Code unconstitutionally abridges the right to Free Speech.

96.  The City of Chicago, in violation of the First Amendment, caused the Plaintiffs to suffer damages, including loss of profits, other financial losses, loss of reputation, loss of free expression, and caused Andrews emotional distress.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a)  Enter a declaratory judgment holding that the Code and the Process violate the First Amendment, as applied to Plaintiffs;
b)  Enter a declaratory judgment holding that the Code and the Process violate the First Amendment as constituted;
c)  Enter judgment against City of Chicago;
b)  Award Plaintiffs compensatory damages, as determined at trial;
c)  Award Plaintiffs attorneys' fees and costs;
d)  Award such other and additional relief that this Honorable Court deems just and equitable.

**Plaintiff demands trial by jury on all counts.**

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for Plaintiffs*

                                                /s/ Amanda S. Yarusso
                                                *Counsel for Plaintiff*

Lawrence V. Jackowiak
Amanda S. Yarusso
Ryan M. Melyon
Jackowiak Law Offices
20 North Clark Street, Suite 1700
Chicago, Illinois  60602
(312) 795-9595