**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES ANDREWS and** | ) | |
| **FELONY FRANKS #1, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 C 2956** |
| | ) | |
| **CITY OF CHICAGO, WILLIE COCHRAN,** | ) | **Judge Coleman** |
| **REGNER RAY SUAREZ, PAT DOWELL,** | ) | |
| **and ROBERT FIORETTI,** | ) | **Magistrate Judge Ashman** |
| | ) | |
| **Defendants.** | ) | |

**CITY DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR RULE 12(B)(1) AND 12(B)(6)**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant City of Chicago ("City") and Defendants Alderman Willie Cochran, Alderman Ray Suarez, and Alderman Pat Dowell (collectively, "Aldermanic Defendants"), (collectively, the City and the Aldermanic Defendants are referred to as "City Defendants"), by their attorney, Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby move this Honorable Court to dismiss Counts I and II of Plaintiffs' First Amended Complaint ("Complaint" or "Comp.") pursuant to Federal Rule of Civil Procedure 12(b)(6) and to dismiss all claims brought by Plaintiff James Andrews for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). In support of their motion, the City Defendants state as follows:

**BACKGROUND, PROCEDURAL HISTORY, AND SUMMARY OF COMPLAINT**

Felony Franks #1, Inc. is a crime-themed hot dog restaurant located at 229 South Western Avenue in Chicago's Second Ward. Comp. ¶ 5. The owner, James Andrews, wanted to advertise the restaurant by placing a sign over the public right of way. Comp. ¶ 17. Such signs are not allowed as

of right: pursuant to the City of Chicago's Municipal Code, one who wishes to place a sign over the public way must first obtain a public right of way use permit. *See* Municipal Code of Chicago ("Code") § 10-28-010(b) (Code provisions are attached to this Memorandum as Group Ex. No. 1).

The public right of way permit process begins when an applicant submits a written request to the City's Department of Business Affairs and Consumer Protection which reviews the application and sends it to the City's Department of Transportation. *See* Code § 10-28-015(a). After the permit application is reviewed by the designated City Departments, it is sent to the Alderman of the affected ward, and the permit is not granted unless it is approved by a legislative enactment voted on by the entire City Council. Code § 10-28-015(c). The Code provides that the Council "shall" deny a public way use permit for any of several reasons, including when:

> the granting of the public way use is not in the best interest of the public, would have a deleterious impact on the neighborhood, or would create a nuisance either on the public way or in the surrounding area.

Code § 10-28-015(c)(i).

Mr. Andrews hired a contractor, NSI Sign, Inc., to complete the permitting process and to erect a sign which featured the name of the restaurant, "Felony Franks." Comp. ¶ 26. NSI Sign tried to persuade Alderman Robert Fioretti, the Second Ward Alderman, to sign the permit application and to support Plaintiffs' proposed public way use ordinance, but the Alderman refused. Comp. ¶¶ 27, 38-39. Plaintiffs allege that Alderman Fioretti refused because he did not approve of the name "Felony Franks" or the content of the proposed sign. Comp. ¶¶ 35-36, 75, 83.

Eventually, Mr. Andrews submitted a public right of way ordinance and permit application to the City without Alderman Fioretti's signature. Comp. ¶¶ 47-48. The proposed ordinance was then referred to the City Council's Committee on Transportation and the Public Way ("the Committee"),

2

which conducted a hearing on the proposed ordinance on April 11, 2011. Comp. ¶ 49. The Committee did not vote on the proposed ordinance at the first hearing. Comp. ¶ 50. At a second Committee hearing held May 2, 2011, the Committee voted on the ordinance, which resulted in a 3-to-3 tie, with one abstention. Comp. ¶¶ 51-54. The three Aldermen on the Committee who voted against the proposed ordinance were Aldermen Cochran, Dowell, and Suarez. Comp. ¶ 55. Plaintiffs allege that the three Aldermen were persuaded to vote against the ordinance by Alderman Fioretti, and that they voted the way they did only because they each disliked the name of the business and the content of the sign. Comp. ¶¶ 56-57, 75, 83.

On June 6, 2011, another Committee meeting was held where a majority of the Committee voted to put the proposed ordinance to a vote before the full City Council. Comp. ¶ 58. On June 8, 2011, the full Council voted to enact the ordinance which granted a public right of way use permit to Felony Franks. The enacted ordinance was designated O2011-1467, and is attached to this Memorandum as Exhibit No. 2.

Count I of Plaintiffs' First Amended Complaint alleges that the Aldermanic Defendants and Alderman Fioretti violated 42 U.S.C. § 1983 and the First Amendment to the United States Constitution by depriving Plaintiffs of their rights to free speech. Count II alleges that the Aldermanic Defendants and Alderman Fioretti violated Plaintiffs' right to equal protection under the

law according to a "class of one" theory of discrimination.[1, 2]  In Counts I and II, which are the subject of the Aldermanic Defendants' Motion, Plaintiffs seek a judgment against the Aldermanic Defendants and Alderman Fioretti, compensatory and punitive damages, as well as attorneys' fees and costs.

The Aldermanic Defendants are moving to dismiss Counts I and II because these claims are barred by legislative immunity. Further, the Aldermanic Defendants seek dismissal of Count II for the additional reason that Plaintiffs fail to state a "class of one" equal protection claim. Finally, all City Defendants move to dismiss all claims made by Plaintiff James Andrews because he lacks standing to sue.

## LEGAL STANDARDS

A Rule 12(b)(1) motion seeks dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In considering a Rule 12(b)(1) motion, courts accept a complaint's well-pled factual allegations as true and must draw reasonable inferences from those allegations in the plaintiff's favor. *See Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir.1993). Courts may, however, look beyond the complaint and consider other evidence to determine whether jurisdiction exists. *See United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th

---

[1]  The present motion seeks dismissal of Counts I and II as against the Aldermanic Defendants (Aldermen Cochran, Dowell, and Suarez). Alderman Fioretti is also moving to dismiss Counts I and II as against him. The City is separately answering Plaintiff Felony Franks #1, Inc.'s Count III which alleges that the City's public way use permit application process violates the First Amendment and deprived Plaintiffs of their free speech rights.

[2]  Plaintiffs also make some nonspecific allegations about their attempt to obtain TIF funds and to obtain permission for a "curb cut"(Comp. ¶¶ 29-32, 34), but none of these allegations concern the actions of Aldermen Cochran, Dowell, or Suarez , or the City of Chicago. As such, this Memorandum does not discuss these allegations, as they are not germane to Plaintiffs' First Amendment or equal protection claims against the Aldermanic Defendants.

Cir.1996). Plaintiffs facing a Rule 12(b)(1) motion bear the burden of establishing jurisdiction. *See Kontos v. United States Department of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pled allegations, construing all such allegations in the light most favorable to the plaintiff, and drawing all reasonable inferences in favor of the plaintiff. *See, e.g., Thompson v. Illinois Dep't. of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint also must provide notice to a defendant of the plaintiff's claims, and "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). A complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In other words, where the well-pleaded facts just infer the "mere possibility of misconduct," the plaintiff has failed to demonstrate that he or she is entitled to relief. *Iqbal*, 129 S.Ct. at 1950. Moreover, allegations that are mere conclusions are not entitled to the assumption of truth. *See, e.g., id.; Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), quoting *Twombly*, 550 U.S. at 555 ("surviving a Rule 12(b)(6) motion 'requires more than labels and

5

conclusions;'" allegations "'must be enough to raise a right to relief above the speculative level'"). Courts are not compelled to accept as true conclusory legal statements or "'conclusory allegations concerning the legal effect of facts set out in the complaint.'" *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818-19 (7th Cir. 2006) (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996)).

A court may take judicial notice of matters that are public record without converting a motion to dismiss to one for summary judgment. Fed. R. Evid. 201; *General Elec. Cap. Corp. v. Lease Res. Corp.*, 128 F.3d 1074, 1080-81 (7th Cir.1997). In particular, a court may take judicial notice of local laws. *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002).

## ARGUMENT

### I. Aldermen Cochran, Dowell, And Suarez Have Absolute Legislative Immunity From Liability In This Lawsuit.

Plaintiffs allege that Aldermen Cochran, Suarez, and Dowell violated Plaintiffs' First Amendment rights to free speech (Count I) and deprived them of equal protection under the law (Count II) when they voted against the public right of way use ordinance while it was pending before the City Council's Committee on Transportation and the Public Way. The act of voting is the only basis for the Aldermanic Defendants' alleged individual liability. The Complaint identifies no other purportedly illegal or unconstitutional act by these three Aldermen. The Aldermanic Defendants should be dismissed from this lawsuit because they are immune from liability for voting, which is a legislative action.

It is difficult to imagine an act that is more functionally or substantively legislative than deliberating on and voting on legislation, and the law is clear that state and local officials are

6

absolutely immune from damages that might arise from their legitimate legislative activities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (city officials who voted on budget legislation were immune from suit because they acted legislatively); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 403–05 (1979) (local officials' enactment of land-use regulations was a legislative act, so they were immune from suit); *Biblia Abierta v. Banks*, 129 F.3d 899, 906 (7th Cir.1997) (Aldermen were immune from suit for introducing and voting on zoning ordinances that would have prevented churches from purchasing property and for requesting the postponement of zoning board hearings pending a vote on the ordinances); *Rateree v. Rockett*, 852 F.2d 946, 950-51 (7th Cir. 1988) (officials were absolutely immune for voting on and approving a budget); *Thillens, Inc. v. Community Currency Exch. Ass'n of Ill., Inc.*, 729 F.2d 1128, 1130-31 (7th Cir.1984) (legislators' attempts to influence regulation of currency exchanges was a legitimate legislative activity subject to absolute legislative immunity); *Reed v. Village of Shorewood*, 704 F.2d 943, 952-53 (7th Cir. 1983) (absolute legislative immunity applied when local officials voted to reduce the number of municipal liquor licenses).

In general, lawmakers' "function of influencing the legislative process regarding a legitimate legislative issue" deserves legislative immunity. *Thillens*, 729 F.2d at 1131. "Courts have granted absolute legislative immunity to various activities which include: (1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." *Biblia Abierta*, 129 F.3d at 903 (citing *Gravel v. United States*, 408 U.S. 606, 616 (1972) (immunity granted for Senator's legislative actions taken in subcommittee); *United States v. Brewster*, 408 U.S. 501, 526 (1972) (legislative immunity would

apply in instances where it would be necessary to inquire into how a legislator spoke, debated, voted, or acted); and *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967) (immunity granted for legislative committee's act of subpoenaing records for use in its hearings)). Absolute legislative immunity protects officials acting in a legislative capacity, but it does not immunize them for their administrative actions. *Rateree*, 852 F.2d at 950 (citing *Tenney v. Brandhove*, 341 U.S. 367, 379 (1951)). Whether a challenged act is legislative or administrative is a "functional" inquiry; that is, courts "'look to the function the individual performs rather than his location within a particular branch of government.'" *See Rateree*, 825 F.2d at 950-51 (quoting *Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir. 1983)).

Here, Plaintiffs have alleged that Aldermen Cochran, Dowell, and Suarez voted against the permit ordinance because of an unconstitutional motive, namely that they did not like the content of Plaintiffs' proposed sign that promoted a crime-themed business. Comp. ¶¶ 56-57, 75, 83, 84. It is well established, however, that "motives do not matter in determining whether the action is legislative." *Bagley v. Blagojevich*, 646 F.3d 378, 394 (7th Cir. 2011) (*cert. denied by* _ U.S. _, _ S.Ct. _, 2011 WL 4534022 (U.S. Oct. 3, 2011)) (citing *Bogan*, 523 U.S. at 54; *Tenney*, 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege."))[3] Further, although the

---

[3] "The privilege of absolute immunity would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.'" *Bagley*, 646 F.3d at 392 (citing *Bogan*, 523 U.S. at 54) (other internal quotations and citations omitted). Legislative immunity is critical to the functioning of democratic government, even if it occasionally shields a lawmaker who acts with a bad motive:

"Admittedly, a particular legislator may vote for legislation for seemingly improper reasons; nevertheless, the rule of absolute immunity shields this conduct. Undoubtedly, this rule may create unhappy results at times, particularly in local legislative bodies where garnering a majority of votes may be relatively easy. One recourse in dealing with legislators who hide behind their shield of immunity and vote 'improperly' is, of course, a resort to the ballot box. ... This [legislative immunity]

vote in this case concerned a public right of way use ordinance that affected only one business, the Seventh Circuit has held that the availability of absolute legislative immunity does not depend upon the number of people affected by the proposed legislation. *See Biblia Abierta*, 129 F.3d at 904.

The Seventh Circuit has recently emphasized that whether an act is legislative depends primarily on whether it is legislative "in form," that is, whether it is a "quintessentially legislative," "integral step[] in the legislative process." *Bagley*, 646 F.3d at 392 (citing *Bogan*, 523 U.S. at 55). To determine whether an act is legislative in "form," courts first determine whether it is an established legislative or constitutional procedure. *Bagley*, 646 F.3d at 392-93 (collecting cases from other federal Circuits). In this case, the act of voting on a proposed public right of way use permit ordinance is unquestionably legislative in form. The Municipal Code provides that a public way right of way use permit must be approved by an ordinance passed by a majority of the City Council before the permit will issue. *See* Code §§ 10-28-010(b); 10-28-015(c). Whether to grant the permit is left to the discretion of the City Council, and the Council members must consider the best interests of the public. Code § 10-28-015(c)(i).[4] Given these established procedures, there can be no question that voting on the public way use permit ordinance was a legislative act. Therefore, Aldermen

---

rule reflects the need to ensure and protect a vigorous, often contentious, democracy within this nation's legislative bodies. The doctrine of immunity embodies the long-held belief that this country is better served by limiting recovery to injured parties rather than threatening the legislative process by placing legislators in fear of lawsuits from exercising their legislative duties."

*Rateree*, 852 F.2d at 951.

[4] Although the United States Supreme Court "does not explicitly require an inquiry into the [challenged] action's substance," courts may make such an inquiry if it helps show the nature of the challenged act. *Bagley*, 646 F.3d at 392 (quoting *Bogan*, 523 U.S. at 56; *Tenney*, 341 U.S. at 376). An act is legislative in substance, in part, when it reflects "a discretionary, policymaking decision." *Bagley*, 646 F.3d at 393. The public policy concerns identified in Code § 10-28-015(c)(i) show that voting on Plaintiffs' public right of way use ordinance was legislative in substance as well as in form. The Aldermanic Defendants are immune from suit.

Cochran, Dowell, and Suarez should have absolute legislative immunity from suit in this case.

## II.     Plaintiffs Have Not Pled And Cannot Plead A Viable "Class of One" Equal Protection Claim.

Plaintiffs assert, in Count II of their Complaint, that the Aldermanic Defendants are liable for a "class of one" equal protection violation based on their committee votes. In addition to legislative immunity for this claim as explained above, Plaintiffs also fail to properly allege the elements of a "class of one" claim. To prove a "class of one" claim, a plaintiff must show that "(1) [it] has intentionally been treated differently from other similarly situated [individuals]; and (2) there is no rational basis for the difference in treatment *or* the cause of the differential treatment is a totally illegitimate animus." *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008) (emphasis in original). The "similarly situated" requirement in class of one cases is, if anything, more stringent than the requirement in a conventional equal protection claim; it requires the plaintiff and the similarly situated persons to be not just similar, but "*prima facie* identical in all relevant respects." *Woodruff*, 542 F.3d at 554; *see also McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002). The showing of similarly situated individuals being treated better must be very specific, lest class of one claims effectively constitutionalize a broad swath of tort law. *See Austin v. Varga*, 2011 WL 3841826, *5 (N.D. Ill. Aug. 25, 2011) (all cases available only in electronic databases are attached as Group Ex. 3),citing *McDonald*, 371 F.3d at 1009.

Plaintiffs' class of one claim fails because they have failed utterly to identify one or more other similarly situated persons who were treated more favorably by the Aldermanic Defendants. All they allege is vague, conclusory generalizations that other businesses and business owners

10

experienced more favorable treatment. Comp. ¶¶ 79-83. No specifics are alleged about who the more favorably treated comparators were, when they were treated more favorably or by whom, or what the specifics of their cases were. This is completely inadequate to state a claim. *See Austin*, *supra*, 2011 WL 3841826 at *5 ("[plaintiff's] theory of class-of-one equal-protection claims would allow a plaintiff to satisfy the discrimination requirement simply by alleging that other law-abiding persons were not subjected to unlawful treatment. If such allegations were sufficient, the scope of class-of-one claims would be distorted to include almost any intentional tort committed by a state actor"). *See also McDonald*, *supra*, 371 F.3d at 1003 (individuals who submitted applications or variances at different times were not similarly situated).

Plaintiffs' failure to allege others who are similarly-situated should be dispositive. *See Kohlman v. Village of Midlothian*, 2011 WL 2600435, *8 (N.D. Ill. June 28, 2011). Even if this were not the case, there are other fatal flaws in Plaintiffs' class of one claim. For one thing, legislators' decisions on voting are subject to a myriad of individual judgments and thus outside the ambit of the kinds of governmental action that can be attacked under the "class of one" theory. *See Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008); *Srail v. Village of Lisle*, 588 F.3d 940, 944 (7th Cir. 2009).

Moreover, it remains unresolved in this Circuit whether a class of one claim can proceed based purely on a showing of irrationality in the disparate treatment of similarly situated individuals, or whether the plaintiff must also show that the defendant's conduct was solely the product of a "totally illegitimate animus." *Kohlman*, 2011 WL 2600435 at *8 n.9, citing *United States v. Moore*, 543 F.3d 891, 898 (7th Cir. 2008) (collecting cases). The latter argument is most persuasive, because "treatment that is arbitrary only because of human or institutional fallibility rather than because

11

unlawful motives are in play is not an apt occasion for constitutional litigation." *Bell v. Dupperault,* 367 F.3d 703, 709-13 (7th Cir. 2004) (Posner, J., concurring). Moreover, "requiring proof of a bad motive brings the class-of-one cases into harmony with the standard equal protection cases and the purpose behind the equal protection clause." *Id.* But Plaintiffs allege no non-conclusory facts whatsoever to support either the Aldermanic Defendants' alleged irrational action or alleged illegitimate animus. Nor could they, because, as demonstrated *supra*, the motive of legislators in voting on legislation is quintessentially protected conduct under the legislative privilege. Hence, Plaintiffs' effort to assert a class of one claim for intentional discrimination based on the Aldermanic Defendants' voting activity is fatally flawed as pled and cannot be salvaged by repleading. Accordingly, it should be dismissed with prejudice.

## III. Plaintiff James Andrews Lacks Standing To Sue The City Defendants For Alleged Constitutional Deprivations.

Plaintiff James Andrews is attempting to assert a constitutional claim for which he has no personal, individual injury in fact and for which he has no standing. All of the alleged constitutional claims relate to alleged actions by City Defendants against Felony Franks #1, Inc., corporately, and not toward Mr. Andrews, individually. Even as the owner/shareholder of Felony Franks, Mr. Andrews does not have standing to assert a Section 1983 claim on behalf of the corporation. As a consequence, all of Mr. Andrews' claims should be dismissed pursuant to Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1).

To state a case or controversy, plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Allen v. Wright*, 468 U.S. 737, 752 (1984). To have standing, a plaintiff must have suffered an "injury in fact" to a legally protected right that is

12

"concrete and particularized" and "not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992) (internal quotation marks omitted). Second, a causal connection must be shown between the injury and the conduct complained of. *Id.* Third, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. In addition, there are prudential limitations on standing. One of these is the requirement that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Under these standing requirements, neither a shareholder nor an employee has standing to bring claims for injury to a corporation. *See, e.g.*, *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir. 1994) ("[s]hareholders do not have standing to sue for harms to the corporation, or even derivative harm to themselves that might arise from a tort or other wrong"); *J.F. Shea Co., Inc. v. City of Chicago*, 992 F.2d 745, 749 (7th Cir. 1993) (noting the long line of cases holding that shareholders, officers, and employees cannot base their standing on injuries to the corporation); *see also In re Rehab. of Centaur Ins. Co.*, 158 Ill.2d 166, 172, 632 N.E.2d 1015, 1017 (1994) ("A corporation is a legal entity separate and distinct from its shareholders, directors, and officers"). This principle applies to federal civil rights claims as well: an individual shareholder or business owner "cannot maintain a civil rights action for damages suffered by the corporation." *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989). "Filing suit under 42 U.S.C. § 1983 does not diminish the requirement that the shareholder suffer some individual, direct injury." *Id.* In *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006), the Supreme Court held that the president and sole shareholder of a corporation could not maintain a civil rights claim because the actions at issue were directed at the corporation and not the president/shareholder.

13

Based on these standards, Mr. Andrews lacks standing with respect to all counts. Plaintiffs allege that the Aldermanic Defendants (Count I) and the City (Count III) deprived Plaintiffs of their right to free speech, but the only expression at issue was Felony Franks' ability to display a sign hanging over the public way. Neither the sign nor the speech was that of the owner/shareholder, Mr. Andrews. Indeed, the ordinance passed by the City Council gave the authority to maintain the sign over the public way to Felony Franks, not Mr. Andrews. *See* Ex. 2 hereto. Similarly, Count II alleges that the Aldermanic Defendants treated the instant public way use ordinance differently than that brought by others. But again, the purpose of the public way use ordinance was to allow a sign to be posted by Felony Franks, not by Mr. Andrews personally. *See id.* Mr. Andrews cannot assert a personal constitutional claim on the basis of a deprivation allegedly suffered by a corporation. Because Mr. Andrews lacks a personal constitutional injury, he lacks standing to sue, and all of his claims against all City Defendants should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above and in their Motion to Dismiss, the City Defendants respectfully request that this Honorable Court dismiss all counts as against Aldermen Cochran, Dowell, and Suarez with prejudice, dismiss Plaintiffs' "class of one" claim with prejudice, dismiss all claims brought by Plaintiff James Andrews for lack of standing with prejudice, and grant City Defendants any further relief this Court deems appropriate.

Date:   November 30, 2011               Respectfully submitted,
                                        STEPHEN R. PATTON, Corporation Counsel
                                        City of Chicago, Department of Law

                               By:      /s/Rachel D. Powell
                                        Assistant Corporation Counsel

14

On behalf of the City Defendants by their Counsel:
Andrew S. Mine
Rachel D. Powell
Jeffery A. Waldhoff
City of Chicago Department of Law - Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
Phone: (312) 744-7220 (Mine); (312) 744-7864 (Powell); (312) 744-2742 (Waldhoff)
Fax: (312) 742-3925
Email: Rachel.Powell@cityofchicago.org