**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES ANDREWS,** | **)** |
| **FELONY FRANKS #1, INC.,** | **) 11cv2956** |
| **Plaintiffs,** | **) Judge Lee** |
| **v.** | **) Magistrate Judge Gilbert** |
| **CITY OF CHICAGO, et al.,** | **)** |
| **Defendants.** | **)** |

**LOCC PETITION FOR A RULE TO SHOW CAUSE AS TO WHY NEW COUNSEL FOR PLAINTIFFS AND EXISTING COUSNEL FOR DEFENDANTS, SHOULD NOT BE HELD TO HAVE VIOLATED L.R. 83.50 & ILRPC 3.3 & 4.1**

NOW COMES Attorney Robert Holstein, on behalf of the Law Office of Christopher Cooper, Inc. (LOCC), and moves the court pursuant to L.R. 83.50; along with the Illinois Rules of Professional Responsibility; as well as the Court's inherent authority, seeking that the Court require new counsel for Plaintiff (Attorneys Jackowiak & Yarusso) along with counsel for Defendants (namely Attorneys' Mine and Thomas for the City of Chicago and counsel for Alderman Fioretti), to show cause as to why they should not be held in contempt for having violated L.R. 83.50 and the Illinois Rules of Professional Conduct for Lawyers 3.3 and 4.1. Through Counsel, LOCC states as follows:

(1) On July 29, 2011, Defendants (including Alderman Fioretti and the City of Chicago) were served with LOCC's fee petition (Attached as Ex. 1). Defendants did not make payment.

(2) As is customary (to avoid litigation), the Defendants were served with a fee petition (PF. Ex. 1) without a filing. The goal, as always, was to avert a filing in ECF. The fee petition was sent by e-mail to Defendants prior to LOCC's withdrawal.

(3) The Defendants responded to the Fee Petition. See LOCC Exhibits 2-3.

(4) The Defendants' e-mail responses included correspondence from Alderman Fioretti counsel, Mr. Thomas (see PF. Ex. 2 & 3).[1]

(5) In that time period, after serving Defendants with the Fee Petition, LOCC withdrew as Plaintiffs' counsel.

(6) Prior to withdrawal, LOCC sought leave from Judge Coleman's court to file a fee petition (of course, if needed because the attorneys could not work it out).

(7) In the time that followed, the Defendants and LOCC could not come to an agreement as to attorneys fees owed by Defendants to LOCC. As granted, prior to withdrawal (see Minute Order 49), LOCC filed its fee petition, see Doc. 87.

(8) Judge Coleman stayed and continued the Fee Petition.

(9) The re-noticed motion (Doc. 87) by LOCC, pursuant to Minute Order 90 (by Judge Coleman) was (as it had always been) and continues to be against the Defendants; however, all of the attorneys of record after LOCC's

[1] Defendants did not pay LOCC's fees; however they did agree to pay Lawrence Jackowiak fees of $105,000.00 and that Defendants have agreed to pay Lawrence Jackowiak $105,000 in attorney's fees; thereby leading a reasonable person to construe that the Corporation Counsel and Mr. Fioretti concede that at least $105,000 worth of work was done in the above captioned matter.

withdrawal, had a duty to do the following pursuant to L.R. 83.50[2] and Illinois Rules 4.1 & 3.3[3]:

1. Inform the newly assigned judge to the case (The Honorable Judge Lee) that there was a **pending** Motion [by LOCC]. In this regard, all of the lawyers, post LOCC, were ordered by Judge Lee to file a Joint Status Report (see Doc. 119 marked as LOCC Exhibit 4). This included that the lawyers were to follow Judge Lee's standing order along with the usual common requirements of the contents of a status report in a Federal court: the lawyers are to tell the judge of pending motions. Nowhere in the status report prepared by Attorneys' Jackowiak, Yarusso, Mine and Thomas is there any mention of the pending motion by LOCC, although, on pages 3-4 there is a section with the header Pending Motions. (See Ex. 4, Status Report).[4]

2. Inform the Honorable Judge Gilbert (as required by his standing order, see LOCC Ex. 5) of the fee petition served on Defendants in July 2011 and the subsequent pending motion (See Documents 49, 87, 90). See

---

[2] On August 2, 2011, Defendants by their counsel, were present in Judge Coleman's courtroom when she granted LOCC leave to file its fee petition. They were present again on March 14, 2012 when the motion was stayed.

[3] **RULE 4.1. Truthfulness in Statements to Others. In the course of representing a client a lawyer shall not:**
(a) make a statement of material fact or law to a third person which statement the lawyer knows or reasonably should know is false;

**RULE 3.3 Conduct Before a Tribunal**
(a) In appearing in a professional capacity before a tribunal, a lawyer shall not:
(1) make a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false....

[4] Just as interesting, there is no mention of LOCC arranging the settlement conference with Judge Ashman's court.

attached, Ex. 5, Judge Gilbert's Settlement Conference Standing Order. Emphasis on Paragraphs' 4 and 8 (h).

(10) Judge Gilbert's order allows for sanctions where an attorney violates the Standing order as to the full settlement authority provision (See Paragraph 5 of Ex. 5).

(11) Mr. Jackowiak's October 2012 response to LOCC's motion (Doc. 139) implies that he informed Judge Gilbert that $5,000 was set aside for LOCC.[5]

(12) Either intentionally or with reckless disregard, in an what may have been an effort to avoid paying fees owed to LOCC, attorneys for Alderman Fioretti (namely Thomas) and the City of Chicago (namely Mine) did hide from Judge Lee and Judge Gilbert that there was a pending motion with fee petition.

(13) Either intentionally or with reckless disregard, in what may have been an effort to avoid paying fees owed to LOCC, attorneys for Alderman Fioretti and the City of Chicago did misinform Judge Lee. They assumed that Judge Lee would not become aware of Judge Coleman's rulings in the case; the motion and the pending fee petition.

(14) Mr. Jackowiak and Ms. Yarusso's motivation not to inform Judge Lee or Judge Gilbert of the motion with fee petition (in spite of Judge Gilbert's standing order and Judge Lee's Order for an accurate status report), was likely so not to have to share any received fees with LOCC.

---

[5] Mr. Jackowiak wrote in Doc. 139, page 5: *"As stated above, after Cooper filed his original attorneys' fees motion in March of this year, he volunteered (without being asked to do so) to only take 1/3 of any attorneys' fees recovered for his work. Plaintiff proceeded with settlement negotiations based on that understanding."*

---

ADDRESSING THE FACT THAT THERE NEVER WAS A FEE PETITION BY MR. JACKOWIAK UNTIL IT BECAME APPARENT AFTER OCTOBER 25, 2012 THAT IN ORDER TO CHALLENGE LOCC'S CLAIMS, A FEE PETITION FROM MR. JACKOWIAK'S OFFICE WAS NEEDED

(15) Attorney Jackowiak claims that he served the City with a Fee Petition--prior to settlement-- [this would be any time prior to October 12, 2012, see Doc. 128]-- pursuant to coming-up with a settlement.

(16) LOCC asks [that] if there was such a document, why wasn't the document produced promptly on December 5, 2012(?) Why did Mr. Jackowiak ask for an extension of time to file the document with the Court (see Doc. 163, **MOTION by Plaintiff James Andrews for extension of time to file *revised motion for attorneys' fees* (Yarusso, Amanda)**). After all, Mr. Jackowiak represented earlier that he [had] served the City with a Fee Petition pursuant to settlement and prior to settlement.

(17) LOCC caused service on agents of Alderman Fioretti and the City of Chicago, each with a subpoena for fee records submitted to them by Mr. Jackowiak. Both Defendants (Fioretti and the City) e-mailed counsel for LOCC--in response to the subpoenas. See attached Exhibits 6-7. Neither Defendant has any intention of producing documents pursuant to the subpoenas.

(18) This conduct by Mr. Thomas, along with the City of Chicago represented by Mr. Mine, further corroborates the position of LOCC that the Defendants have been engaged in a scheme to manipulate Judge Coleman's order and to misinform Judge Lee's court and Judge Gilbert's court.

(19) Perhaps, the most egregious conduct of the attorneys to which this petition for rule concerns, is the violation of L.R. 83.50. Their representation to Judge Lee's court on October 25, 2012--to cause the case to be closed-- [a representation] that no other matters, excluding the filing of an agreed order as to fees (that excluded LOCC), were before the court. See attached Transcript, Ex. 8, keeping in mind that the second part of the transcript is not continuous, rather, occurs at perhaps, at least 45M to an hour after the 4 lawyers--not including a lawyer for LOCC-- stood before the bench. LOCC was in court on October 25, 2012. It was to LOCC's surprise that none of the four lawyers at the bench (Yarusso, Mine, Thomas and Jackowiak) stated that there was a remaining issue: the pending motion. Judge Lee asked the four: "Is there anything else that we need to address?"

MS. YARUSSO: Actually, what we had agreed to in the
14 settlement was a dismissal without prejudice to automatically
15 become with prejudice within 60 days to allow for some of the
16 injunctive relief to be implemented. So if that's okay with
17 your Honor?
18 THE COURT: No,...

See attached Ex. 8, 4:12-18, Transcript of Proceedings.

LOCC waited until the end of the scheduled call and approached the bench. See attached Transcript (Exhibit 8) showing when the case was called and when LOCC approached the bench later.

(20) The enormous post-closed case activity constitutes significant use of court resources, none of which would have been necessary, had the attorneys for Defendants, and Plaintiffs' new counsel, been forthcoming with Judge Gilbert and Judge Lee. The effort to disregard Judge Coleman's order; along with the effort to

avoid paying fees for work done by LOCC; as well as to avoid paying for two frivolous Defendants' motions, has caused the allocation of considerable court resources and time after the case was closed.[6]

WHEREFORE, LOCC, through counsel, requests that the Court order Defendants' counsel and Plaintiffs' new counsel to show cause without delay and that all Defendants' counsel and Plaintiffs' new counsel, are ordered to pay all fees and costs incurred by LOCC related to post-litigation events.

January 14, 2013

Respectfully Submitted,
s\Robert A. Holstein
HOLSTEIN LAW OFFICES LLC
29 S. LaSalle St., Suite 230, Chicago, Illinois 60603 (312) 906-8000

CERTIFICATE OF SERVICE: The undersigned attorney certifies that he caused a filing of the foregoing on ECF on January 9, 2013 and that the Defendants are registered e-filers. s\Robert A. Holstein

6 Two motions (Documents 18 & 25) filed by the City and wrongly characterized as emergencies were frivolous. Since they were not for the purpose of bonafide emergencies, the Defendant City of Chicago should have to pay fees to LOCC pursuant to F.R.C.P. 37 and L.R. 37.2 and 42 U.S.C. 1988 fee shifting.