UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FELONY FRANKS et al. | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 11 C 2956 |
| | ) | |
| v. | ) | Judge Lee |
| | ) | |
| CITY OF CHICAGO et al. | ) | Magistrate Judge Gilbert |
| | ) | |
| Defendants | ) | |

### Alderman Fioretti's Response to LOCC's Petition for a Rule to Show Cause

Contrary to the Supreme Court's repeated admonition that a "request for attorney's fees should not result in a second major litigation," Christopher Cooper ("Cooper") and the Law Office of Christopher Cooper ("LOCC") continue to flood this Court's docket with meritless and increasingly obnoxious filings. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources*, 532 U.S. 598, 610 (2001). The most recent of these filings, LOCC's petition for rule to show cause against the principal attorneys for all parties remaining in the case, is the most improper of all.

Apparently unwilling to wait for this Court's ruling on the issue of its standing to seek fees, LOCC instead has chosen to fire off a salvo of outlandish allegations against all the principal attorneys left in the case. In its petition, LOCC attacks the honesty and ethical character of Alderman Fioretti's attorney all the while failing to comply with even the most basic requirements for such a petition. Rather than believe the omission of its fee petition from the parties' Initial Joint Reassignment Status Report was at worst an innocent mistake, LOCC has concocted a conspiracy theory that might well have come from Oliver Stone. But where is the proof? Far from the clear and convincing evidence necessary to establish civil contempt,

837442_2

LOCC's petition is littered with sensational conjecture and speculation. LOCC's petition should be denied, and, as will be shown in Alderman Fioretti's forthcoming motion for sanctions, Robert Holstein and LOCC should be sanctioned for filing it.

## Background

### *Cooper's involvement in the case*

In May 2011, Plaintiffs James Andrews and Felony Franks #1, Inc. ("Plaintiffs") filed the instant action against the City of Chicago, the Committee on Transportation & Public Way, and various Chicago Aldermen[1] alleging that they, and in particular Alderman Robert Fioretti, unlawfully had prevented Plaintiffs from obtaining a public way use permit needed to hang a sign outside their hot dog stand. *See* Dkt. 1. Plaintiffs initially were represented by Christopher Cooper of the Law Offices of Christopher Cooper, Inc. Not long after the filing of its complaint, Felony Franks received its right of way permit from the City of Chicago. When the parties appeared for status before Judge Coleman on June 10, 2011, Plaintiffs sought and were granted leave to file an amended complaint. *See* Dkt. 32-33. However, on June 24, 2011, Plaintiffs filed a "Notice of Withdrawal of Plaintiffs [sic] In-Court Request to Amend Their Complaint." *See* Dkt 35. Three days later, Cooper sent an email to counsel for Alderman Fioretti and counsel for the City stating: "I am trying to make my way from this case. The transition is not complete." *See* June 27, 2011 Email from C. Cooper attached hereto as Fioretti Ex. 1. By the time Defendants' responsive pleadings were due on July 22, Cooper had informed counsel for the City and Alderman Fioretti that he intended to withdraw from the case but still had not filed a motion to withdraw. Accordingly, on July 22, Alderman Fioretti and the City Defendants filed separate motions to dismiss Plaintiffs' initial complaint. *See* Dkt. 41. One week later, Cooper

---

[1] In this memorandum, all City of Chicago defendants other than Alderman Fioretti will be collectively referred to as the "City Defendants."

sent an email to counsel for the Defendants transmitting an unfiled fee petition and informing them that he would be filing a motion to withdraw from the case that evening. *See* Cooper July 29, 2011 Email attached hereto as Fioretti Ex. 2; *see also* Dkt. 46. Cooper represented Plaintiffs in this action for less than three months, and, at the time Cooper sought to withdraw from his representation of Plaintiffs, the only actions involving Alderman Fioretti in the case had been the filing of a complaint and Alderman Fioretti's motion to dismiss the complaint.[2]

### Cooper withdraws from the case and files a fee petition seven months later

On August 2, 2011, the parties appeared before Judge Coleman for hearing on Cooper's motion to withdraw. During the hearing, Judge Coleman granted Cooper's motion to withdraw and additionally, at Cooper's request, granted him leave to file a fee petition. *See* Dkt. 49. The next day, Cooper sent an email to counsel for Defendants requesting that they send a letter to him stating their position with respect to his fees. *See* August 3, 2011 Email from C. Cooper attached hereto as Fioretti Ex. 3. Given that Cooper's tenure as Plaintiffs' attorney had resulted in nothing against Alderman Fioretti that would trigger an obligation to pay Cooper's fees, counsel for Alderman Fioretti sent a letter to Cooper informing him that Alderman Fioretti strongly objected to any claim for fees and requesting the basis for such a claim. *See* August 5, 2011 Letter from J. Thomas attached hereto as Fioretti Ex. 4.

On March 5, 2012, **some seven months after sending his fee petition** to counsel for Defendants, Cooper finally filed his fee petition. *See* Dkt. 87-89. When the parties appeared for presentment of the motion before Judge Coleman, the following exchange occurred immediately after the parties introduced themselves:

---

[2] Plaintiffs and the City of Chicago had agreed to enter into a stipulation providing, among other things, that Plaintiffs' request for a right of way permit would be heard and voted on at the next meeting of the Committee on Transportation & Public Way. *See* Dkt. 30. Alderman Fioretti refused to sign or agree to the stipulation.

> Mr. Cooper: Your Honor, I filed a motion pursuant to my request to file a fee petition. Your Honor, I haven't talked with Mr. --
>
> The Court: Well, yes, that was my question, Mr. Cooper. Have you all talked about this?
>
> Mr. Cooper: Well, Mr. Jackowiak, I understand he's been busy. And he and I talked this morning. **Your Honor, is it possible that this motion could be stayed?**
>
> The Court: Very possible. Entered and continued until you all get a chance to at least talk about it.

*See* Transcript of 3-14-12 Hearing attached hereto as Fioretti Ex. 5 (emphasis added).

After additional discussion between the Court, Cooper, and Plaintiffs' current counsel regarding the need for Cooper and Plaintiffs' current counsel to discuss the fee issue, the following exchange occurred:

> Mr. Cooper: And, Your Honor, just for the record I respectfully disagree with Mr. Jackowiak that there's a standing issue. I believe that that issue was addressed by the Court, **but I do believe that Mr. Jackowiak and I should work collectively as -- in how we broach the issue with the City and with Mr. Fioretti's counsel.**
>
> The Court: Well, again this Court's [sic] does not believe that it should be at this point in front of me. I will enter and continue it. I won't strike it at this point, but I'll enter it and continue it.

*See id.* at 4:16-5:2 (emphasis added).

***The parties settle the case and Cooper reenters***

Following the March 5, 2012 hearing, counsel for Alderman Fioretti does not recall receiving any further communication from Cooper until LOCC's series of attorney's fee filings on October 12, 2012. *See* Dkt. However, at least two important events took place in the interim. First, the parties engaged in extensive settlement discussions both privately and with the assistance of Judge Gilbert, which resulted in the parties reaching an agreement to resolve the case. Second, the case was reassigned to this Court, and the parties submitted an Initial

4

Reassignment Joint Status Report to this Court on June 15, 2012. The omission of LOCC's motion for attorney's fees from the Initial Reassignment Joint Status Report underpins the majority of LOCC's accusations in the instant petition.

As referenced above, LOCC refiled on October 12, 2012 identical copies of its prior motion for fees, memorandum in support thereof, and notice of motion (including a certificate of service that erroneously included the original March 5 service date). *See* Dkt. 129-131. Although LOCC set its motion for presentment on October 23, 2012, this Court entered an order resetting LOCC's motion for October 31. *See* Dkt. 135. LOCC again refiled identical copies of its prior motion for fees and memorandum in support thereof (including a certificate of service that erroneously included the original March 5 service date). *See* Dkt. 136-137. Although this Court already had ordered that LOCC's motions would be heard on October 31, LOCC attempted to renotice its attorney's fees motions for October 25. This Court again issued an order stating that all three of LOCC's now-filed fee motions were reset for hearing on October 31. *See* Dkt. 141.

On October 25, attorneys for the parties appeared before this Court for status hearing. Cooper was present in the courtroom but did not address the Court when the case was called. However, Alderman Fioretti's counsel subsequently has learned that Cooper waited for this Court to finish its call on October 25 and then attempted to have an ex parte discussion with the Court regarding LOCC's motion for fees. *See* Transcript of 10-25-12 Hearing attached hereto as Fioretti Ex. 6. During that discussion, this Court told Cooper: "The [fee] motion will be considered and heard. So that's why we ended up renoticing it for next week." *See id.* at 7:6-7.

On October 25, LOCC also filed a reply in support of its motion for attorney's fees. *See* Dkt. 142, 144. In that reply, LOCC accuses Plaintiffs' current counsel of misleading Judge Lee

and Judge Gilbert and failing to include LOCC's motion for fees in the parties' Initial Reassignment Joint Status Report. *See e.g.* Dkt. 144, ¶ 2. Shortly before the parties were to appear before Judge Lee for hearing on LOCC's motion for fees, LOCC filed a motion requesting that its fee petition be referred to Judge Coleman for resolution. In that motion, LOCC again accused current counsel for Plaintiffs of failing to include LOCC's motion for fees in the Initial Reassignment Joint Status Report. *See* Dkt. 150, ¶¶ 5-6. At the motion hearing on October 31, this Court denied LOCC's motion for a referral to Judge Coleman and outlined a clear plan for handling LOCC's fee petition. *See* Transcript of 10-31-12 Hearing, p. 12:11-13:8 attached hereto as Fioretti Ex. 7.

Less than a week later, LOCC filed three more motions: (1) a motion for default against Defendants; (2) a motion for referral to Judge Gilbert; and (3) a motion to strike. Two of LOCC's motions accused the attorneys for the parties of failing to include LOCC's motion for fees in the Initial Reassignment Joint Status Report to this Court. *See* Dkt. 155, p. 3 fn. 1; Dkt. 156 ¶ 1. This Court denied all three of LOCC's motions. *See* Dkt. 159.

Apparently dissatisfied with the progress of LOCC's fee petition, counsel for LOCC, Robert Holstein ("Holstein"), emailed subpoenas to the attorneys for the City Defendants and Alderman Fioretti on December 11, 2012. *See* December 11, 2012 Email from R. Holstein attached hereto as Fioretti Ex. 8. On December 26, 2012, undersigned counsel emailed Holstein and then telephoned Cooper to make the simple request that they agree to delay dealing with the subpoena until this Court ruled on the issue of LOCC's standing. Cooper refused. Accordingly, counsel for Alderman Fioretti sent a letter to Holstein objecting to LOCC's subpoena. *See* December 26, 2012 Letter from J. Thomas attached hereto as Fioretti Ex. 9. The instant petition for rule to show cause – at least the first iteration of the petition – followed two weeks later.

## Argument

**I.    LOCC's Petition Should Be Denied for Failure to Comply with Local Rule 37.1**

This Court should not even reach the substance of LOCC's petition because LOCC has failed to comply with the basic requirements for filing such a petition.   L.R. 37.1, which is entitled "Contempts," requires an affidavit, which the instant petition does not contain:

> A proceeding to adjudicate a person in civil contempt of court, including a case provided for in Fed.R.Civ.P. 37(b)(2)(D), shall be accompanied by the service of a notice of motion or order to show cause.  The affidavit upon which such notice of motion or order to show cause is based shall set out with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby, and such evidence as to the amount of damages as may be available to the moving party.

LOCC's failure to comply with the local rules is more than a mere technical violation. Citing a prior version of the local rule, the Seventh Circuit has held that in requiring an affidavit "the local rules not only notify the alleged contemnor of the charges against her but also ensure that the party alleging contempt has entered competent evidence into the record." *Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 751 (7th Cir. 2007). The accusations in LOCC's petition are among the most serious and potentially harmful that can be made against an attorney:  multiple ethical violations; intentionally hiding information from a court; intentionally misinforming a court; engaging in a scheme to manipulate court orders and misinform a court.  If LOCC, Holstein, and Cooper want to make those types of accusations, they should be required to come forward with competent evidence in support.  And if LOCC, Holstein, and Cooper want to accuse others of violating the local rules, they should at least follow the local rules themselves!

Further, not only is LOCC's petition missing the required affidavit, LOCC's petition is missing any legitimate purpose for its filing.  "Civil contempt sanctions are designed for the dual purpose of compelling compliance with a court order and compensating the complainant for

losses caused by contemptuous action." *Tranzact Tech., Inc. v. 1Source Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005). This Court has indicated multiple times that it would decide LOCC's fee motion. And to the extent that LOCC might argue that it had to renotice its motion for fees, such an action *was a direct result of LOCC's own request that the motion be stayed.* LOCC asked Judge Coleman that its motion be stayed so that fees could be discussed with Plaintiffs' current counsel; the parties apparently could not work the issue out; and LOCC renoticed its motion. This seems to be the exact sequence of events contemplated when LOCC's fee petition first was presented. If anything, every other party in the case has suffered greater harm as a result of LOCC's prolific motion practice. Cooper represented Plaintiffs for just three months but his fee petition has occupied almost one-quarter of the filings in this case.[3]

## II.    The Dubious Timing and Circumstances of LOCC's Petition

In the months prior to the filing of the instant petition, LOCC raised the issue of its fee petition being omitted from the Initial Reassignment Joint Status Report in no fewer than three filings made to this Court. Further, Cooper and or Holstein made three appearances before this Court (October 25, October 31, November 8) in which the issue of LOCC's motion for fees was discussed. If Cooper or Holstein truly believed that the other attorneys in this case had engaged in such egregious conduct, why did it take LOCC almost three months to file the instant petition? By the time that LOCC chose to file its petition, this Court had been well aware of LOCC's fee motion for months, and this Court had indicated multiple times that it would consider and rule upon LOCC's motion. If this Court thought any attorney involved in the case had attempted to dupe it or had engaged in any of the alleged misconduct set out in LOCC's petition, there is no doubt it would have required an immediate explanation.

---

[3] By undersigned counsel's count, 44 of the 182 docket entries in this case are related to LOCC's fee petition.

Case: 1:11-cv-02956 Document #: 185 Filed: 02/05/13 Page 9 of 16 PageID #:1351

**III.    LOCC Has Not and Cannot Establish Civil Contempt**

It is undisputed that the parties did not include LOCC's motion for fees in the Initial Reassignment Joint Status Report filed with this Court.  Regardless of whether the motion should have been included in the status report in the light of its procedural posture, this omission was at worst an innocent mistake.  Undersigned counsel did not intend to hide or misrepresent the status of the motion for fees when he signed the Initial Reassignment Joint Status Report.  But LOCC seeks to take the fallibility of counsel and transform it into nefarious misconduct.  Light on facts and heavy on sensation, LOCC draws the most harmful inference at each step of its analysis. LOCC fails to cite any case law in support of its arguments.  Far from the clear and convincing evidence necessary to establish civil contempt, LOCC's petition is filled almost wholly with rank speculation and conjecture.  The petition should be denied.

LOCC has not and cannot meet its burden of establishing, by clear and convincing evidence, that: "(1) [an Order] sets forth an unambiguous command; (2) [counsel] violated that command; (3) [counsel's] violation was significant, meaning it did not substantially comply with the Order; and (4) [counsel] failed to take steps to reasonable [sic] and diligently comply with the order." *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). The substantial failings in LOCC's petition are set forth below in the order in which they appear in the petition:

*A.*    In footnote 1 to paragraph (4) of the petition, LOCC alleges:  "Defendants did not pay LOCC's fees; however they did agree to pay Lawrence Jackowiak fees of $105,000.00 and that Defendants have agreed to pay Lawrence Jackowiak $105,000 in attorney's fees; thereby leading a reasonable person to construe that the Corporation Counsel and Mr. Fioretti concede that at least $105,000 worth of work was done in the above captioned matter."  In making these

allegations, LOCC reveals that it cannot be bothered to confirm whether the allegations in the petition conform to the exhibits attached to it:

First, the motion for fees filed by Plaintiffs and underpinning this allegation by LOCC makes clear that "Defendant City of Chicago has agreed not to oppose a motion for reasonable attorneys' fees" but neither mentions nor is directed at Alderman Fioretti. See Dkt. 166 ¶ 2.

Second, even if LOCC has not reviewed the actual documents underpinning its assertion, LOCC has attached to the instant petition a letter from Alderman Fioretti's counsel unequivocally denying that Alderman Fioretti agreed to pay attorney fees to Plaintiffs. In that letter, counsel for Alderman Fioretti states that the "first portion of your subpoena incorrectly characterizes Alderman Fioretti's relationship to any attorneys' fees being paid in this matter to the Jackowiak Law Offices. As is clear from Plaintiffs' unopposed motion for attorneys' fees and proposed order, it is the City of Chicago -- not Alderman Fioretti -- that has agreed to pay attorneys' fees to Plaintiffs." Pet. Ex. 6 attached hereto as Fioretti Ex. 9.

**B.**     In paragraph (9)2 of the petition, LOCC, in support of its contention about not informing Judge Gilbert of a pending petition and a pending motion, cites Paragraphs 4 and 8(h) of that Judge's Settlement Conference Standing Order. Those paragraphs, however, have nothing to do with the requirements ascribed to them by LOCC:

4.     Full Settlement Authority Required

The Count reserves a substantial block of time for each settlement conference. This time is wasted and opposing parties incur unnecessary expense if a party comes to the settlement conference with limited authority. Therefore, a party or its representative attending the settlement conference must have full settlement authority. "Full Settlement Authority" means the authority to negotiate and agree to a binding settlement agreement at any level up to the settlement demand of the plaintiff or counter-plaintiff. If the person attending the settlement conference does not have authority to agree to a settlement without making a telephone call, then the person on the other end of the telephone call should attend the settlement conference. Although it is probable and even likely the case will settle for

something less than the settlement demand, the foregoing requirement is intended to avoid a situation in which a party or its representative comes to the settlement conference with authority that is less than what could be reasonably within the realm of possibility for the case. If a party requires approval by an insurer to settle, then a representative of the insurer with full settlement authority must attend.

8.      Topics for the Settlement Conference

The parties and their counsel should consider and be prepared to discuss the following topics, among others, at the settlement conference:

(h)    Are there outstanding liens? Do we need a representative of the lienholder at the settlement conference?

*C.*    In paragraph (12) of the petition, LOCC alleges: "Either intentionally or with reckless regard, in what may have been an effort to avoid paying fees owed to LOCC, attorneys for Alderman Fioretti (namely Thomas) and the City of Chicago (namely Mine) did hide from Judge Lee and Judge Gilbert that there was a pending motion with fee petition." These accusations are devoid of any support in the record.

First, LOCC asks this Court to make the incredible assumption that Alderman Fioretti's attorney believed he could "hide" from this Court and Judge Gilbert a document filed in the publicly accessible docket *for this case*.

Second, any contention by LOCC as to the information shared by the parties with Judge Gilbert is pure speculation. Pursuant to Local Rule 83.5 and Paragraph 7 of Judge Gilbert's standing order -- which is cited in LOCC's petition and attached thereto -- the pre-conference letters exchanged by the parties are confidential. LOCC cannot possibly know the information exchanged in those letters and thus cannot claim that counsel for Alderman Fioretti attempted to hide information from Judge Gilbert.[4]

---

[4]  Counsel for Alderman Fioretti believes that the settlement correspondence between the parties directly contradicts LOCC's conjecture and is willing to submit that correspondence to the Court for in camera review.

11

Third, LOCC omits from the petition a number of critical factual details about LOCC's previously filed motion for attorney fees. For the benefit of this Court, attached hereto as Fioretti Ex. 5 is a copy of the transcript of proceedings before Judge Coleman at which LOCC presented its motion for attorney fees. Although the transcript speaks for itself, there are three points that warrant special mention: (1) LOCC, through its representative Cooper, specifically asked that LOCC's motion for attorneys' fees be stayed; (2) Cooper stated that moving forward he and Plaintiffs' current counsel "should work collectively as -- in how we broach the [fee] issue with the City and with Mr. Fioretti's counsel"; and (3) Judge Coleman entered and continued LOCC's motion for attorneys' fees so that Cooper and Jackowiak could discuss the issue of fees. Any suggestion by LOCC that Alderman Fioretti's attorney attempted to hide LOCC's motion in an effort to avoid paying attorneys' fees is a deliberately warped interpretation of history.

**D.** In paragraph (13) of the petition, LOCC alleges: "Either intentionally or with reckless disregard, in what may have been an effort to avoid paying fees owed to LOCC, attorneys for Alderman Fioretti and the City of Chicago did misinform Judge Lee. They assumed that Judge Lee would not become aware of Judge Coleman's ruling in the case; the motion and the pending fee petition."

The allegations in paragraph (13) are even more far-fetched than those in paragraph (12). Now, rather than simply trying to hide documents previously filed in the docket, LOCC asks this Court to believe that counsel for Alderman Fioretti actively attempted to misinform this Court with the assumption that by doing so this Court would not become aware of prior rulings in the case. LOCC again asks this Court to make the incredible assumption that Alderman Fioretti's attorney believed he could prevent this Court from becoming aware of unspecified rulings available in the publicly accessible docket *for this case*. LOCC fails to present even a scintilla of

evidence in support of these grave and inflammatory accusations, much less the clear and convincing evidence its burden requires. The reality is that LOCC presented its motion for fees to Judge Coleman; *at the request of LOCC*, Judge Coleman stayed the motion to allow former and current counsel for Plaintiffs to work out issues regarding compensation; when those issues could not be resolved, LOCC renoticed its motion for fees.

*E.* In paragraph (18) of the petition, LOCC alleges: "This conduct [objecting to subpoenas] by Mr. Thomas, along with the City of Chicago represented by Mr. Mine, further corroborates the position of LOCC that the Defendants have been engaged in a scheme to manipulate Judge Coleman's order and to misinform Judge Lee's court and Judge Gilbert's court." Alderman Fioretti will not repeat the defects that plague this accusation and also are present in LOCC's prior accusations. However, its bears mentioning that the objections sent by Alderman Fioretti's attorney to LOCC's subpoena not only were legally appropriate under F.R.C.P. 45(c)(2)(B) but were in the spirit of this Court's ruling that it would first address the standing of LOCC before proceeding to the merits of LOCC's motion for attorney fees. *See* Fioretti Ex. 7. LOCC's attempt to impart nefarious meaning to the use of a device expressly authorized by the Federal Rules of Civil Procedure (and use of which came only after LOCC refused a reasonable request by Alderman Fioretti's counsel to delay dealing with the subpoena until this Court had ruled on the standing issue) is patently absurd.

*F.* In paragraph (19) of the petition, LOCC alleges: "Perhaps the most egregious conduct of the attorneys to which this petition for rule concerns, is the violation of L.R. 83.50. Their representation to Judge Lee's court on October 25, 2012 -- to cause the case to be closed -- [a representation] (sic) that no matters, excluding the filing of an agreed order as to fees (that excluded LOCC), were before the court." Putting aside that L.R. 83.50 does not set forth

13

specific responsibilities for attorneys, prior to the October 25 status hearing, LOCC twice had

attempted to notice its attorney fees motion for October 25, and both times this Court renoticed

the motion for October 31. See Dkt. 135, 141. LOCC's suggestion that Alderman Fioretti's

counsel somehow tried to hide from this Court a motion after this Court already had twice

acknowledged and renoticed the motion defies logic. Even more troubling is that LOCC has

attached to the instant petition a transcript showing that this Court was well aware of the motion

for fees by LOCC at the time of the October 25 hearing and that -- despite having twice been told

that his motion would not be heard on October 25 -- Cooper sat through the parties' status

hearing, waited for all the other attorneys to leave the courtroom, and then attempted to have an

ex parte conversation with the Court regarding the motion. Fioretti Ex. 6. If LOCC would like

to accuse attorneys of misconduct on October 25, it should look first to its own conduct.

## Conclusion

LOCC's petition successfully establishes improper conduct and violations of the local

rules -- **just not against those attorneys to whom LOCC attempts to ascribe it**. While

making unsupported and outlandish allegations against other attorneys, LOCC apparently failed

to realize that it had attached a transcript evidencing an attempt by Cooper to engage in an ex

parte discussion with this Court. And, while accusing others of violating unspecified or

incorrectly cited local rules, LOCC apparently failed to read the local rule governing the filing of

petitions for contempt.

LOCC's petition fails before it even begins because LOCC did not bother -- or was not

able -- to attach the required affidavit outlining "with particularity the misconduct complained of,

the claim, if any, for damages occasioned thereby, and such evidence as to the amount of

damages as may be available to the moving party." The petition fares no better on its merits. In

its petition, LOCC makes accusation after accusation with no apparent thought shown to the proof necessary to sustain such accusations or the ramifications of making them. The sheer absurdity of LOCC's allegations perhaps is most easily evidenced in the claim that the parties hid Cooper's motion for fees from Judge Gilbert. Given the confidential nature of settlement communications, LOCC's claim undoubtedly is based on pure conjecture. LOCC's petition challenges the truthfulness and ethical character of undersigned counsel, and one would hope that an attorney would carefully consider the ramifications of making such a challenge before doing so. The law certainly does; it requires both an affidavit specifically outlining the alleged violations and clear and convincing evidence of such violations. LOCC's petition has neither. The lack of affidavit, the timing of the petition, the lack of any legitimate purpose in filing the petition, and the absence of any credible evidence lead to the conclusion that the petition was filed for the sole purpose of harassing Alderman Fioretti and his attorney. Accordingly, the petition should be denied.

In the unlikely event that this Court chooses not to deny the petition, counsel for Alderman Fioretti requests a hearing as set forth in L.R. 37.1(b).

Dated:  February 5, 2013

Respectfully submitted,

ALDERMAN ROBERT FIORETTI

By: _____
One of His Attorneys

James P. Daley
David M. Novak
James D. Thomas
SCHUYLER, ROCHE & CRISHAM, P.C.
One Prudential Plaza
130 E. Randolph, Suite 3800
Chicago, Illinois  60601
(312) 565-2400

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Alderman Fioretti's Response to LOCC's Petition for a Rule to Show Cause was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 5th day of February 2013, to the following:

> Lawrence V. Jackowiak
> Amanda S. Yarusso
> Ryan M. Melyon
> Jackowiak Law Offices
> 20 N. Clark, Suite 1700
> Chicago, Illinois 60602
>
> Christopher C. Cooper
> Law Office of Christopher Cooper, Inc.
> 500 N. Michigan, Suite 1514
> Chicago, Illinois 60611
>
> Andrew S. Mine
> Jeffery A. Waldhoff
> Rachel D. Powell
> City of Chicago
> Law Department
> 30 N. LaSalle, Suite 900
> Chicago, Illinois 60602
>
> Robert A. Holstein
> Holstein Law Offices, LLC
> 29 S. LaSalle, Suite 230
> Chicago, Illinois 60603

James D. Thomas